Good morning. May it please the Court, Alan Gutman, on behalf of the appellant Jeffrey Galen. The key issue here is whether the officer's role in setting bail for Mr. Galen from $50,000 on the published bail schedule, raising that bail, enhancing that bail to $1 million without an appropriate hearing or any hearing in open court as required under Penal Code Section 1270.1 violates constitutional standards with respect to the Eighth Amendment. The district court below basically — Is that a due process argument? Proceeding without a hearing? It certainly violates the due process standard required. You didn't — as I understand your pleadings, you didn't raise a pure due process claim or did you? I would agree that I did not segregate a due process argument, but I believe it is inherent in the process of determining what the appropriate amount of bail is. So without a hearing — so I guess your argument is without a hearing or without at least complying with the statutory requirements, the bail was excessive? It has to be, because 1270.1 requires that hearing for any enhancement. The Bail Reform Act refers to any pretrial detention proceeding. There must be extensive procedural safeguards that are employed that are to safeguard this right to have an appropriate amount of bail. Let me — maybe you can answer. There was one question. You know, I was at one time in my professional career a municipal court judge, and we used to — I used to do — I don't think I ever did bail duty. We had the commissioners do bail duty, if I'm not mistaken. But, you know, if somebody gets arrested on Saturday night and the police officers think, well, you know, the bail schedule, this is a serious matter and we need to have — we need to go up. The bail needs to be higher. Okay. The courts aren't open on Saturday, Saturday night, Sunday. They're not open until Monday morning. How do they go about — can't they just use the phone procedure as they — as took place here to request an increase in the bail schedule? I hate to plead ignorance as to the proper protocol for an arrestee in that particular scenario. I can address the statutory scheme and — Let me — I'm just asking, does the statutory scheme preclude that particular circumstance? I think without a doubt. Why else would the statute exist? 1270.1 specifically references the violation of 273.5, which is what Mr. Galen was arrested for. Right. But you're talking about state law, right, state penal code sections, and what we need to find here is a constitutional right. And I think that bootstrap, the failure — or an excessive bail. So I think maybe I start talking about the Eighth Amendment. I understand, Your Honor. The reliance upon the penal code under California law is not intended to exclude an analysis under federal law. I believe they mirror one another. I think 1269C of the California Penal Code, the language is almost identical to the language found in the Bail Reform Act of 1984. The case of U.S. v. Solano, which was the first U.S. Supreme Court case to interpret whether or not the Bail Reform Act of 1984, whether or not it complied with the constitutional standards required under the Eighth Amendment, and it looked at the Stack v. Boyle case and determined whether or not pretrial detention would ever be appropriate. I believe that California law, at least in its statutory scheme, and the cases as well, very much are analogous and closely follow the federal guidelines. But why is this an excessive bail? I mean, turning to Judge Wardlaw's question, the ultimate question here was this an — taking all his allegations as true, where there's a conflict in the evidence and you take them in Mr. Galen's favor, why does this — why do these facts show a violation of the Eighth Amendment, an excessive bail clause? Bail for this — What's excessive about this? Excessive bail has been defined through a long line of cases as being anything above that which would require the plaintiff — pardon me, the R.S.D. to appear for his trial. That's the — But also includes — we also know that it includes safety concerns. The safety concern enters into the equation only upon presentation of evidence in a — That seems to be the dominant theme here, was the safety. I understand that. But what happens to the procedural safeguards for the R.S.D.? Is it up to the law enforcement — Well, that was my initial question. Did you raise a due process claim or are you raising an Eighth Amendment excessive bail claim? I don't know that they can be split apart so neatly. I think the Eighth Amendment necessarily requires us to look at the due process requirements because we can define what excessive bail is. It's anything more than that which is required for the R.S.D. to appear. Well, let me ask you this. What should a magistrate judge take into account in determining whether or not to increase the bail, the presumptive bail, which here was $50,000? The magistrate can consider the threats to the victim or any potential witnesses, whether or not the R.S.D. has any prior acts, any prior convictions, whether or not there are public safety concerns separate and apart from any threats, and the likelihood of this particular R.S.D. appearing at the next hearing or for trial. Isn't that what happened here? That is. However — Why is the $1 million excessive? Going back to the statutory scheme, the presumptive amount of $50,000 must be used unless there is a hearing. And the amount of $1 million, which requires a much greater amount for premium to bond out on that particular $1 million bail, becomes more like a punitive measure, something akin to forcing a pretrial detention without any of the procedural safeguards. The fact that Mr. Galen was able to secure the bail in that amount doesn't constitute a waiver of his right to challenge the excessiveness or the reasonableness of the bail under Wagenman. However, the reality is that any amount that exceeds that, which is reasonably necessary, unless there's a record made establishing the basis for the commissioner or magistrate's decision to determine that $1 million was appropriate. Can the commissioner consider the R.S.D.'s wealth or lack of wealth? To what extent does that factor into any decision the commissioner might make? The commissioner, I believe, in appropriate circumstances, could consider that as one of the factors to determine whether or not the R.S.D. would appear. Well, you know, and the only meaningful case that's discussed, the Eighth Amendment, in this kind of context, is the case out of the First Circuit, Wegerman? Wagenman, yes. You know, and there they were concerned that, you know, the police arrested the fellow and he had $480, and so they said, hmm, you know, if we just set this at $500, there's no way you're going to make bail, so we're going to set it at $500. You know, we're going to do everything we can. And they said, well, that was, in those circumstances, that was excessive. Is that what you're contending happened here? Precisely. I believe the evidence indicates, at least we're looking at it from the subjective perspective of Sergeant Barrier, and the subjective intent was to ensure that Mr. Galen could not bail out. That was the intent. But is there any evidence at all that Barrier and Henrich knew whether or not Mr. Galen could make a million-dollar bail? I mean, he was known to be a wealthy attorney, may have been known to the particular police officers. I don't know that's not in the record. But is there any evidence in the record that shows one way or the other that Barrier and Henrich had any knowledge whatsoever of whether or not Mr. Galen would be able to make bail of a million dollars? According to the testimony of Sergeant Barrier, she came to that conclusion that a million dollars would be appropriate to prevent Mr. Galen from bailing out based upon a number of criteria such as the house that he lived in, the fact that he was a lawyer, the fact that she knew the neighborhood that he lived in. But further than that, I don't believe that anybody did any sort of background financial check to determine whether or not he would be able to meet the threshold requirements to qualify for a one-million-dollar bail. Doesn't that distinguish this case besides the other exacerbating facts in the Weggeman case? Doesn't that distinguish this case from Weggeman? I'm not going to sit here and profess that it fits neatly on all fours. I do see certain parallels that militate in favor of a finding that the motivations, the intent, and the manner in which the procedures were recklessly disregarded, that that demonstrates the intent necessary to satisfy the excessive bail finding. Moreover, I think there is evidence in the record, which the district court decided to summarily disregard in its summary judgment adjudication, that the officers had woefully misrepresented the status of the case, of the action, inasmuch as the representation, which was a direct misrepresentation that the injuries required medical treatment for one. Number two, the probable cause declaration, which was the excerpt at 375, it refers to a scratch. And all of a sudden, a scratch became a laceration. This, and. Right, but was that a deliberate falsehood about, I don't, I don't quite recall the exact facts around the representation about medical care. That, weren't the officers told that by someone else, that she did require medical care? Deputy Heinrich testified under oath that it was just a guess that the injury required medical treatment. And that was after several months to contemplate what the, you know, by the time he was deposed on this, it was many, many months after the incident happened. So there was ample opportunity to reflect upon how to explain that away. But the reality is that there was some sort of representation made. Otherwise, we have to presume, we have to speculate with the lack of a record. Following up on Judge Paez's initial question to you, is it your position that the Constitution of the United States, as exemplified in the excessive bail clause, imposes upon the California court, having set a bail schedule, to adhere to that bail schedule over the weekend where court proceedings are not available, and puts the burden on the prosecution to come into court on Monday morning when courts are in session and seek an increase in bail to meet the peace bond aspects of the statute? Bearing in mind that at common law, there was a sharp distinction between a bail bond to assure appearance and a peace bond to assure that the person would keep the peace during the pendency of the case. Is it your position that the bail schedule must be adhered to over the weekend and could only be increased by an in-court proceeding to address the factual matters that you've outlined? Is that your position? Yes, it is, and I'd like to just amplify on that, if I might. There is a process by which pretrial detention would be appropriate for certain enumerated violations, as well as certain situations where the arrestee presents certain articulable dangers and risks to the community. I believe that if we leave it to the law enforcement agency to determine in a unilateral fashion what the appropriate amount of bail should be and allow them to deviate from the bail schedule that's been set forth whenever they determine, based upon the facts that they've marshaled together, whatever's influencing that particular decision to arrest the suspect, of course we have no check, we have no opportunity for any procedural safeguards, whether we call that a due process restriction or whether we call it what the excessive bail clause requires. If an arrestee is dissatisfied with the bail ultimately set by the commissioner, does he or she have a speedy appellate or review remedy in the state courts? There is a bail review hearing available under 1269C of the California Penal Code. However, I wouldn't call it a speedy remedy because in Mr. Galen's case, it was 4 o'clock on a Friday afternoon and he would have spent the weekend at one of these luxurious downtown lockup facilities with general population until Monday morning before he would have been able to avail himself of that opportunity to see a magistrate about getting his bail reduced from $1 million. Are you quite sure about that? I mean, I'm not familiar with the state practice in this area, but in the Ninth Circuit, we certainly get calls at 5, 6, 7 on Friday nights asking us on an emergency basis to review a bail setting and Friday night is the most often time to get those emergency motions. I don't understand why such a motion couldn't be made in the state court. I can only tell you based upon the procedure that I've observed through this case that it was not available to him on an urgent basis, that it wasn't a question of getting a lawyer in and finding a magistrate at 4.30 on a Friday afternoon who would listen or who would respond and set up an opportunity to have that hearing. The process of going from $50,000 bond to a million dollars bond was done without Mr. Galen's knowledge. Let me just say, I know you want to save time for your rebuttal, but I just have, you know, there was in the file a form, I guess it reflected the note taking of the assistant in the bail commissioner's office. And it's very difficult to read, but at least when I worked my way through it, there doesn't seem to be any mention in here of her injuries, just that she was in fear for her safety. Does that suggest that the commissioner really didn't rely on checking the injury in the box? I mean, this seems to be what was related to the commissioner, although we don't know. That's the speculation, and that's one of my main arguments here. As far as what happened to Mr. Galen, that's done. But for future arrestees who are subjected to similar procedures in the future, should they be left to the court — should they be left with the only remedy that courts will one day speculate as to what was done in contemplating what the appropriate amount of bail was for them, because I believe the statute's clear it requires a hearing. Thank you. I'd like to reserve the three minutes I do have left. I hardly know where to begin because I wrote down everything that was said, and I'd like to make corrections. Let me just say this at the outset. This is not a case about excessive bail. This is a case about moderately inconvenient bail. I don't know. A million-dollar bail is quite a bit. Well, it might be a bit. There's very few — you know, in the presumptive bail schedule, there's only — there are very few series of crimes that set bail at a million dollars. Murder, that's not capital. Kidnap. That bail schedule is set for the convenience of the officers. No magistrate is available. The Court may note that on our bail deviation form, there are phone numbers supplied. 6 a.m. to midnight, one can make a call to request a reduction of bail or O.R. release. We know that Mr. Galen — How does that work? Assuming for the moment that an arrestee, prescient enough to have a lawyer standing by, was aware of that remedy, what would the lawyer do? Who would he call, and what process would he set in motion? Well, this particular arrestee, himself a lawyer, did have a lawyer standing by. He said that he phoned his lawyer, and he phoned the bail company, the bail bondsman. And so he had that advice available. And all he had to do was pick up the phone or have his lawyer pick up the phone and say, we want to make a request for reduced bail. And the phone number is there, and it is — That's from the presumptive bail, though. That's from the presumptive bail.  They boosted it up to a million dollars. And he could have picked up the phone right then. And he didn't do it. And who would answer the phone? Who answers the phone under that? That is the bail deviation unit, which is a department within the county probation department. And it is their job to act as the go-between by taking these phone calls, going to the bail commissioner here, Commissioner Feiler, and relating whatever it is they're going to relate. We don't have that in the record. He's on duty for the weekend. I'm sorry? I think he's on duty for the weekend. I think you're right. That was my assumption, that there's someone you can call. Yeah, you can reach these people while you're reaching the inconvenient times. But he doesn't — he can't call the bail commissioner. They have to go through the bail deviation unit. That's the way it is set up. And the bail deviation unit contacts the commissioner. That's correct. But there's no hearing in front of the commissioner. And that's what his point was. Well, that is the way that this system works. Let me ask you, I know his case isn't framed this way, and I think you're probably correct. But does state law authorize — I mean, maybe his lawsuit should have been against the Superior Court. Well, I'd like to see him try it, but that's right. It's the commissioner — Why not? He can ask for declaratory injunctive relief. But that's neither here nor there. That is neither here nor there. I would point out that in the complaint, the only statute that was mentioned as a basis for a due process claim was 1269C, which says there has to be a declaration provided. And in this case, we know that there was a probable cause declaration was faxed by Deputy Heinrich to the bail deviation unit, which set forth a series of facts. That bail deviation form in the check-the-box, it is established in the record that that never, ever went to the bail commissioner. Counsel can talk all day about misrepresentations, falsehoods, and the like. That never got there. That is established in the record. It was not relied upon. And that goes to the — So where did this — what was the purpose of this, then, of this bail deviation form? Who — The bail — Who — they just fill it out and put it in the — threw it in a drawer someplace, or — This is what the sheriffs use to indicate that they have discussed with the arrestee his right to request a bail reduction, how to do it, and make notations about the arresting deputy's understanding of the case. Oh, I see. Because it has his — it says, I have read and understand this advisement. Yes. And it's signed. And that's an arrestee's signature. Yes. So he was advised. He knew. He could have requested the bail reduction. But, you know, you talk about the statute, 1270.1 — So let me ask you this. So is it your argument that the fact that he had available to him the ability to call the bail deviation unit once the bail was set at $1 million, that that ameliorates any claim or precludes any claim that the bail is excessive? No. I just say that that waives his argument that he had no ability to do anything or to get the hearing, which they're claiming that should be had right now. The other point is, this due process argument is out the window. Mr. Gutman was not at the argument on the summary judgment motion. But if you look in the transcript, this was addressed by Judge Fisher. And it was — it was essentially waived. And the question was asked. Are you saying that, you know, even if you violate a state law, does that give you grounds and standing for your constitutional argument here about excessive bail? And the appearing counsel said, no, you're right. You know, we don't have that here. Couldn't state law be considered when the defendants in the action are state employees on the question of reasonableness for purposes of qualified immunity? In other words, if a state official knowingly violates state law and the effect is to deny someone procedural rights, could not that person then argue that the deviating state employee was not entitled to qualified immunity because he acted contrary to existing state law? Why isn't that a reasonable argument? Well, first of all, that would go to the due process angle. But second of all, in this instance — and I think we have to read Judge Fisher's order and also the reporter's transcript carefully — she made several references to, you know, I'm not going to take my personal experience into this. I'm just going to say, plaintiff, you have not made your showing you need to get over this. The fact is, and I think judicial notice is appropriate here, Judge Fisher spent years as an arraignment judge and was very familiar with bail issues. The point of the matter is, to answer your question, Judge Singleton, that the operation by which these bail requests for reduction and enhancement are done is done in line with the jail manual. It's done in line with the county courts and Commissioner Filer doing his job. And so if somehow this due process question could be translated into the question of whether the bail is excessive, which is what this case is about, then you have to say, gee, well, would a reasonable officer know that even though this is the way we're doing things all the time and it has the imprimatur of the superior court and it has the imprimatur of the jail manual, and this is what we're told to do, that they somehow need to go and look up in the law books and familiarize themselves with the penal code section, which may not be the case. It may not necessarily be inconsistent because it doesn't prohibit this kind of a modification of procedure. And the fact is, the information is taken to a judicial officer. It's the judicial officer that makes the decision. Putting aside the claim that there may be some irregularity here with the state law procedure, forget that for a moment. You know, in the SAUCIE qualified immunity analysis, the first question is, taking all these facts in light most favorable to the claimant and resolving any conflict in favor of the claimant, do they state a constitutional violation? Okay. So is there ever a claim? Can there ever be a claim for excessive bail? Sure there can. What would be excessive? What is the limiting principle? I mean, what would be excessive in this case? I'll tell you what would be excessive for me is something I can't afford. Well, right. Something that has to be. Why? Because that would be tantamount to pretrial detention, which the State doesn't do. You've read my thoughts. Okay. Here, I think it's wrong to look at, it's incorrect to look at the fact that Mr. Galen actually made bail. I mean, in this case, as I understand the argument, the officers said it at a place where they thought he wouldn't be able to make bail because it was such a high number. I guess they underestimated Mr. Galen's wealth. What would be excessive in this case? Ten million? Well, let me first make sure we got our facts right. Officer Barrier, the watch commander, agreed with the arresting deputy, specifically the senior deputy, Deputy Bowlesmith, who was the training officer for two-month training, Deputy Heinrich, that the bail should be increased because she knew a lot about the background. She understood Mr. Galen's propensities. She'd spoken extensively well before this arrest with Ms. Jacobs. She saw the photographs. She read the report and so forth. And she said, yes, I agree it would be a good idea to request increased bail. She did not have a number in mind. She did not speak a number with Deputy Bowlesmith. It was Deputy Bowlesmith who came up with the number of one million. And what the considerations in his mind about that are somewhat unclear. But to say, would ten million be too much? I guess for Bill Gates, no. The point being, we have to consider, we have to consider the safety of the public and the safety of the victim foremost. And if this slowed Mr. Galen down four hours, as it did from that $50,000 bail, which he, you know, it's kind of a joke in this case. All right? It slowed him down a little bit. And let's also note that practically his first stop was to go see Ms. Jacobs and impose upon her to not cooperate with the prosecution so that she would recant all of these things that she said, which she later came back, as we know, because she sued him and she had her declaration about how he threatened to kill her if she ever took another photograph of her injuries and lots of other physical and psychological injury. So the limiting principle that I gather you're articulating then is public safety. I would say that's a foremost consideration. So as long as the request is made for public safety purposes, it can go as high as ten million, as Judge Wardlaw said. No, I don't agree with that. Well, then where's the limit? How do we, you know? You're asking me for a bright line. Well, no, I'm not asking you for, you know, five million is too high or 3.2 million is too high. I'm just looking for some principles that would allow me to say, well, you know, in future cases, you know, this might be excessive. I can give you those principles from what I know from this case. And I don't know and I doubt rather that this case is a case upon which we can announce a rule about what would be excessive, except in the context of this case. However, here's our guidance. Article I, Section 12 of the California Constitution enumerates a series of factors which much must be considered. The statute 1270.1 1275 enumerates the statutes which must be considered. By correspondence, the 1984 Bail Reform Act enumerates statutes which much be considered. And in both the California and the Federal systems, you can throw bail out the window. You can just hold them in jail. And in the Federal system, you can do pretrial detention, but that's an elaborate procedure that all of us have been through. It's very elaborate, and for good reason. The point is, how does that stack up with the phrase excessive bail? And at some point, we've got to take our common sense understanding of what's excessive. And I'm joking around about, well, Bill Gates doesn't care if it's 10 million. But the point being that a common sense notion of what's excessive cannot be translated into an exact numerical ratio. It has to come as a result of considering things. And the problem in this case, and we can't lose sight of this, it's a qualified immunity question, and here we are debating it, and no one can really come up with an articulation. Plaintiff wasn't able to. I wasn't able to. Judge Fischer wasn't able to. Counsel, at the risk of paraphrasing your opponent's argument, and judicial paraphrases are always wrong, at the risk of paraphrasing his argument, he seems to be reasoning as follows. The officers in this case sought a bail that would keep Mr. Galen in jail. The exact amount was insignificant so long as it was greater than he could meet. That was their intent, and there is some evidence in the record to suggest that. That intent was communicated in some way and influenced the commissioner to set than the officers themselves had ever heard of being set in a similar case. If their intent communicated to the commissioner was to keep Mr. Galen in jail rather than to use bail either as an incentive to come to trial or an incentive to keep the peace, then it violates Salerno, which is an existing U.S. Supreme Court decision, and we can take constructive notice that, or rather, we can find that all police officers should have constructive notice of decisions of the U.S. Supreme Court. Why isn't that a prima facie case?  I understand the paraphrase, and... I'm trying to go back to the beginning of your causation issue. It's a long paraphrase. You argue that the officers had the intent, but the commissioner made the decision, and the concern I have is there's substantial Ninth Circuit authority that takes the view that even if there's an independent decision maker, if the defendant influences that decision, that's enough to hold him or her in a 1983 case. Here's your answer. The Crawford L, Crawford-E-L case says subjective intent is irrelevant for purposes of a qualified immunity test. Instead, we have to ask, we have to invoke the second prong of associating. That's, but with that statement you just made, you're getting to the second prong. Judge, I think Judge Singleton's question is on the first prong. Is this a, did he make a prima facie showing of a constitutional violation? You answer that question yes, then you ask, was the law clearly established so that a reasonable officer would understand what his obligations, whether his conduct would violate the law, or even if it is, and even if you conclude it is well established, there's peculiarities in the case at hand that you can still excuse the officer's conduct. And your answer was directed, I think, at the second prong, not the first prong that Judge Singleton asked. I'll stand corrected, and thank you. The question of whether bail is excessive I think was answered pretty well by Judge Fisher. And she said, you know, and I'm paraphrasing her, of course, you take some guy who's knocking around his wife or girlfriend. He doesn't have a job. He doesn't have any assets. He gets roped in for that. That $50,000 might as well be $50 billion because he's not going anywhere. Is that excessive? Well, it's the scheduled bail. It's got all the things the plaintiff says are great and good and would reflect, you know, proper procedure and so forth. And then you take Mr. Galen, who's all ready to go and happy about it, saying, oh, I can make $50,000, no sweat. And it ends up he is inconvenienced for a few more hours and ends up paying the $50,000 bond without any apparent difficulty. The problem with that, though, is the scheduled bail is a fixed neutral amount determined by the superior court judges. That's right. And there's no intent there with respect to a particular individual to preclude somebody from making bail. Here is Judge — if you take Judge Singleton's summary, and the facts here show that there was some effort to prevent Mr. Galen from making bail, particularly him. There was an effort to certainly impede his making bail. Obviously, if it were an effort designed to make bail unconstitutionally excessive in terms of him getting out fairly rapidly, it was markedly unsuccessful. And that, I think, is the point. What is excessive? And it seems to me, and this is my analysis. I don't think I've got a case on point. But having distilled the cases, I think that if excessive bail, as a pretext, results in de facto detention, now under Salerno and the 1984 Bail Act, you would have constitutionally excessive bail. However, there is so little guidance in the case law. We know, at least in the California cases, they say, well, a million dollars bail instead of $100,000 posted bail. We don't know why the judge said this. This is in Ray McSherry. And so we're going to send it back down and let the trial court explain the reasons why. So there's no rejection of a 10-to-1 ratio. Here we have a 20-to-1 ratio. And the fact remains that it was not excessive in terms of resulting in detention as a pretext. There was not detention. You want detention, they can hold them the whole doggone weekend. Well, counsel, if the constitutional right exists, but under existing law is so confusing that no one understands it, isn't it the burden of the appellate court to take it in hand and provide guidance? That would be very helpful. I'm just not so sure that this is the case and this is the record which allows us to do that, or I would have come in here with a definite proposal about that. Well, this is my problem with it. I don't think, other than what the testimony of Henrich, who says what he told the spousal abuse occurred multiple times, crime was likely to continue, and nothing else. And also he says he didn't give any reason. Do we know anything else about what was told to the bail commissioner or what factors the bail commissioner took into consideration? We know absolutely nothing about that. Because in the cases that come up where, say, a probable cause was given to issue a search warrant or an arrest warrant, the standard that is used is that the information by the police officers for them to be held liable under Section 1983 has to be deliberately or recklessly false information. And if this is all that we have in the record, I guess it comes down to a failure of proof in the end of what really were the factors that the bail commissioner considered. And that goes to the causation element. And on that element, plaintiff failed in the burden of proof. There are procedures available he did not invoke. Can I ask you a question? There was one other issue that's raised here by Appellant he didn't address in his opening remarks, and that is, you know, the commissioner in the end awarded attorney's fees. Judge Fisher? Yes. I'm sorry. The judge awarded attorney's fees here. Yes. And I'm sorry. And, you know, she said, well, the case wasn't frivolous. Filing of the case wasn't frivolous. The initial filing wasn't frivolous. You know. But when he filed a motion for summary judgment, he should have realized that the officers were entitled to qualified immunity. Now, you know, we have case law that says that where the law is not the law is debatable, the law is not certain, that those cases should not be treated as or deemed lacking in merit and whatnot. I have a hard time squaring the award of attorney's fees here in this particular circumstance where they're giving off, essentially, for qualified immunity. The law was not clearly established. I find that very troubling. Well, I think I can allay those troublesome thoughts because if the law was not clear, that means it was not clear to Deputy Heinrich and to Sergeant Barrier, and that means he had no case in the first place. Not so. Well, I think these cases that you're talking about do not go to the question of qualified immunity. It just means that the officers are immune from liability. That's all. Which is the reason why the case should not have been brought. Well, but she determined that the case was brought. It had merit. She wasn't prepared to say that with the initial filing of the case that it lacked any merit. And the discussion here indicates that a reasonable jurist could disagree about whether or not there was merit to the initial filing of the case. And even Judge Fisher says that the initial filing cannot be treated as nonmeritorious. She only awarded attorneys fees for having to force you to file the motion for summary judgment. And basically what she says is, he should have known that I was going to grant qualified immunity and should have dismissed that case and folded up his tent and gone home. Well, that's right. And, you know, I didn't file a cross-appeal from that. That's in Judge Fisher's discretion. She can say, hey, I'm going to find a cutoff point here. And our case law in the Ninth Circuit is if you maintain a suit once you know it's become without merit, then you've got to drop it or face the consequences. And that's exactly what she decided. I'm not going to take issue with her exercise of discretion. She made that call, and I'll live with it. But there's no doubt in this record and on these facts that plaintiff did not have the requisite element of causation. Did not have. Well, you know, that's even that's debatable, because for purposes of determining the first prong, you take all the facts in the light most favorable to him. And you could look at, as Judge Singleton said, you could look at this evidence, and a strong inference suggests that they only got that $1 million figure from guess who. I disagree, and I think I can show it to you on the facts. Well, the notes that I was waving around indicates that, you know, they made the request for a $1 million bail. I don't know what I did with it, but it's on that. Deputy Englishman. Those notes. The bail commissioner, the bail deviation units assistance notes that are very difficult to read, on that form is the figure $1 million. I don't think it's the case. Well, let me try and explain it in terms of this case. What was alleged all along is that liability is premised on misrepresentations and falsehoods presented to the bail commissioner. That is plaintiff's case. The factual proof of that was the bail deviation unit where Deputy Heinrich checked the box, offense likely to continue, and victim requires medical attention. It was the theory that this got presented to the bail commissioner. As the facts were developed, it was established that those misrepresentations never got to the bail commissioner. Ergo, he could not have relied on misrepresentations, and that is the fracture in the causal link. Well, just taking that out, one could still infer from this that their intent was to fix or get a bail that would preclude him from making bail. But, you know, we've been in this before, and I don't want to take any more time. I would just say speculation is no substitute for facts on summary judgment. One question, counsel. Has the county done a survey to determine the frequency with which bail is set at a million dollars in domestic violence cases? Not to my knowledge. I do not know of any. Do you have a survey as to the typical bail in domestic violence cases? I just don't have that information, Judge. Okay. If I could just have one closing comment. You know, it's one thing to switch horses in midstream. It's another one to switch horses and then go back in the opposite direction. And I'm talking about saying in summary judgment this is a clearly established right and saying I'm making new law here. There's no law out there on this. I'm not sure he made that argument. I think that was my take on it. All right. Thank you, counsel. Thank you very much. We're over. Well, over. You have a few minutes left. I had three minutes and six seconds remaining, if the Court will indulge me. Yes. Yes, of course. Thank you. A couple of issues that I want to address right from Mr. Fee's closing comments, and that is with respect to this causation element. The county and certainly any municipality would safely be able to preserve its right to set bail at whatever amount it ever wanted without any scrutiny if it just dispensed with this whole procedure of having any sort of hearing on the record, which it did here. That is part of the problem, I think, that you didn't really raise. Part of the problem is that you have a failure of proof, and part of the reason that you have a failure of proof is because you didn't have an open hearing on the amount of bail at the time. However, from the argument, it appears that you could have had a hearing. Your lawyer could have called someone and made the arguments why the bail at $1 million was excessive but didn't avail himself of that procedure. So I don't know if you can blame the county for the failure of proof, or if it's really that your client and his lawyer could have asked for a reduction in bail right then and there. I understand what Mr. Fee said, and I understand, Your Honor. There's just nothing in the record to establish that this magical, imaginary proceeding where at 4 o'clock in the afternoon, Mr. Galen could have availed himself of some second opportunity before Commissioner Filer. You know, I've been at superior court judges' houses when they've gotten a call about bail, you know, for dinner. I mean, it happens. So, and I know it's real, and, you know, I can't help but know that from my own experience. I understand that. Yeah. But what about the requirement under the statute that says the reasons for the modification or the enhancement in the bail must be stated on the record? Obviously, when the Supreme Court visited this issue in Salerno and several of its progeny, and when the California courts have addressed it, and when the California legislature addressed this issue in 1270.1, there was some basis for it. And 1275 of the penal code, which the district court appeared to rely on extensively, doesn't even apply in this particular situation because that only applies when it is pertaining to setting, reducing, or denying bail. It never mentions enhancing or increasing bail. So, could your client have just, if he couldn't make, if it was excessive and he wasn't able to make bail, gone in before a commissioner on Monday, or, you know, filed some papers in a court appearance, had a hearing? Presumably, but the bail had already been increased. The damage is already done. The violation has already occurred based upon what the officers did in communicating that to the commissioner via teletype or telephone at noontime or prior to noon before Mr. Galen was even apprised of the fact that they were seeking an enhancement of the bail. So, the information relied upon by the bail commissioner in enhancing the bail, that was done long before Mr. Galen was even apprised of his right to seek this particular issue. I see that my time is up. I don't want to abuse the Court's accommodation here. If there are any further questions, I'd be happy to take them otherwise. Thank you very much. I submit. Thank you very much. Galen v. Los Angeles County is submitted.
judges: Wardlaw, Paez, Singleton